IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J&J SPORTS PRODUCTIONS, INC.   \*

    Plaintiff   \*

           \*   Civ. No.:   PJM 11-3339

v.   \*

NATASHA MELGAR, et al.   \*

    Defendants   \*

## MEMORANDUM OPINION

Plaintiff J&J Sports Productions, Inc. has sued Natasha Melgar (individually and t/a Melgar Enterprises, Inc. t/a Irenes Pupusas 33 t/a Irene's Pupusa #3 t/a Irene's Pupusas III) and Lester Romero (individually and t/a Melgar Enterprises, Inc. t/a Irenes Pupusas 33 t/a Irene's Pupusa #3 t/a Irene's Pupusas III) alleging violations of 47 U.S.C. § 553 (which proscribes theft from a cable network), 47 U.S.C. § 605 (which protects companies against and the theft of their proprietary communications), and conversion. Both Defendants were properly served and failed to plead or otherwise respond to the Complaint, and the Clerk of the Court has entered Default against them. Plaintiff has now filed a Motion for Default Judgment against both Defendants. For the following reasons, Plaintiff's Motion for Default Judgment will be **GRANTED**, but the Court rejects Plaintiff's proposed damages and adjusts the award accordingly.

I.

Plaintiff is an international distributor of sports and entertainment programing. It purchased the exclusive nationwide television distribution rights to *"Firepower": Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight Program* (the "Program"). It thereafter entered into sublicensing agreements with commercial entities throughout North

America, wherein it granted limited public exhibition rights to these entities for the benefit and entertainment of the patrons within their respective establishments (i.e., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs, etc.). The interstate transmission of Plaintiff's Program was encrypted and made available only to Plaintiff's customers, those commercial locations which paid Plaintiff the requisite license fees to exhibit the Program.

Plaintiff alleges that Defendants violated both 47 U.S.C. §§ 553 and 605 by knowingly intercepting, receiving, and exhibiting the Program without authorization. Plaintiff requests enhanced statutory damages for §§ 553 and 605 in the amount of $50,000 and $100,000 respectively. Plaintiff also requests $1,500 in compensatory damages for its conversion claim. The record reflects that Natasha Melgar was served with the Complaint on December 22, 2011, and Lester Romero was served with the Complaint on December 1, 2011. Neither Defendant responded within the requisite time period, and Plaintiff moved for entry of default on January 18, 2012. On February 15, 2012, the Clerk of the Court issued an Order of Default as to both Defendants. Shortly thereafter, Plaintiff filed the instant Motion for Default Judgment. Defendants have failed to respond to any of Plaintiff's filings.

## II.

Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered and the complaint does not specify the amount of damages, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Fed. R. Civ. P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court.

*See Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011). The Fourth Circuit has a "strong policy that cases be decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Nevertheless, default judgment may be appropriate where the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

In determining whether to award default judgment, the court takes as true the well-pleaded factual allegations in the complaint as to liability, but not as to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Fed. R. Civ. P. 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where the amount of damages is uncertain, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, Civ. No. 09-

3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

### III.

Where there are allegations comparable to those found in this case, Courts have held that the alleged conduct violated both §§ 553 and 605. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Las Reynas Rest., Inc.*, Civ. No. 4:07–67, 2007 WL 2700008, at *1 (E.D.N.C. Sept. 11, 2007); *Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc. No. 2*, 172 F. Supp. 2d 810, 812 (S.D.W.Va. Sept. 19, 2001). Plaintiffs, however, cannot recover under both statues for the same conduct, so courts typically grant recovery under only § 605, as it provides for greater recovery. *See, e.g., See J & J Sports Prods., Inc. v. Castro Corp.*, Civ. No. 11-188, 2011 WL 5244440, at *3 (D. Md. Nov. 1, 2011); *J & J Sports Prods., Inc. v. Quattrocche*, Civ. No. 09-3420, 2010 WL 2302353, at *1 (D. Md. June 7, 2010). Courts have similarly not allowed recovery for claims of conversion, as they would not exceed those under §§ 553 or 605 and would result in double-recovery. *See J & J Sports Prod., Inc. v. J.R. 'Z Neighborhood Sports Grille, Inc.*, Civ. No. 2:09–03141, 2010 WL 1838432, at *2 (D.S.C. April 5, 2010). Thus, the Court finds that Plaintiff has stated a valid claim under § 605 and will not consider damages under § 553 or for Plaintiff's conversion claim.

### A.

In *Quattrocche*, Judge Nickerson set forth the relevant considerations in a claim for damages under § 605(e)(3)(C)(i)(II):

> Here, Plaintiff has elected an award of statutory damages, which under 47 U.S.C. § 605(e)(3)(C)(i)(II) entitles Plaintiff to an award "as the court considers just," between a range of $1[,]000 to $10,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605(a). Courts in this Circuit have used two different approaches to exercising its discretion in awarding damages under § 605(e)(3)(C)(i)(II). The first approach

has two variations. This approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment at the time the program was shown or by the maximum occupancy of the establishment. *Joe Hand Promotions, Inc. v. Bougie, Inc.*, Civ. No. 109–00590, 2010 WL 1790973, at * 5 (E.D.Va. April 12, 2010) (patrons present); *Admiral's Anchor*, 172 F. Supp. 2d at 812 (maximum occupancy); *Entertainment by J & J, Inc. v. Gridiron, Inc.*, 232 F. Supp. 2d 679, 681 (S.D.W.Va.2001) (maximum occupancy). The first variation seeks to approximate the defendant's profits or the plaintiff's lost earnings assuming each patron would have ordered the event for residential viewing. *291 Bar & Lounge*, 648 F. Supp. 2d at 474. The second variation seeks to award the license fee the defendant would have paid if it had legally purchased the event for exhibition. *Id.* The other approach to calculating damages is to award a flat sum per violation. *J.R. 'Z Neighborhood Sports Grille*, 2010 WL 1838432, at *1 ($5[,]000); *Angry Ales*, 2007 WL 3226451, at *5 ($1[,]000); *Kingvision Pay-Per-View Ltd. v. Gadson*, Civ. No. 1:04–678, 2007 WL 2746780, at * 2 (M.D.N.C. Sept. 18, 2007) ($10,000); *Las Reynas Rest.* 2007 WL 2700008, at *3 ($2[,]000).

*Quattrocche*, 2010 WL 2302353, at *2.

In support of Plaintiff's argument that it is entitled to the maximum amount of statutory damages, Plaintiff attaches an affidavit of a private investigator who witnessed 15 televisions showing the Program in Defendants' establishment. The investigator entered the establishment without paying a cover charge and without being required to order any food or drinks. She counted between 66 and 73 patrons during the 8 minutes she was present, and she estimated the capacity of the establishment to be approximately 250 people. However, Plaintiff does not provide any sort of "rate card" demonstrating the cost for Defendants to legally purchase the broadcast. *Cf. J & J Sports Prods., Inc. v. Greene*, Civ. No. 10–0105, 2010 WL 2696672, at *5 (D. Md. July 6, 2010) (awarding statutory damages of $2,200 based on a rate card provided by Plaintiff demonstrating that it would have cost Defendant that amount to legally purchase the broadcast). Thus, the Court cannot calculate the amount of profit Defendants realized or the license fee that Plaintiff lost as a result of Defendant illegally obtaining the broadcast. *See Castro Corp.*, 2011 WL 5244440, at *4.

Accordingly, Plaintiff will be awarded statutory damages under § 605(e)(3)(C)(i)(II) equal to the lesser amount of $1,000.

### B.

Plaintiff additionally argues that it is entitled to enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which authorizes damages of up to $100,000 for each violation if the Court determines that the violations were committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain." Courts look to several factors in determining whether enhanced damages are warranted, including: (1) evidence of willfulness; (2) repeated violations over an extended period of time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5) charging an admission fee or charging premiums for food and drinks. *See Quattrocche*, 2010 WL 2302353, at *2.

There is no dispute that Defendants' actions in broadcasting the Program were willful and for direct or indirect commercial advantage. The program was encrypted and authorized for viewing only by Plaintiff's customers, and "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Castro Corp.*, 2011 WL 5244440, at *4 (quoting *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999)). There is no evidence, however, that Defendants engaged in repeated violations, that the establishment advertised the broadcast to potential customers in the days or weeks prior to airing it, or that any kind of an admission fee was charged or premiums put on the food and drinks. Moreover, the maximum award of $100,000 is clearly excessive in light of nearly identical cases resolved before this Court. *See Castro Corp.*, 2011 WL 5244440, at *5 (ordering a total damages award of $7,000); *Greene*, 2010 WL 2696672, at *5 (ordering a total damages award of $8,800); *Quattrocche*, 2010 WL 2302353, at *3 (ordering

a total damages award of $5,000). This should come as no surprise to Plaintiff, who was also the plaintiff in the aforementioned cases. *See id.* Plaintiff has provided no special facts in this case to justify deviating from this Court's prior holdings.

Nevertheless, the Court finds that some form of enhanced damages is proper to deter potential future unlawful uses of communications such as the Program. Where there are no allegations of repeat behavior or other factors suggesting egregious willfulness, courts generally award three to six times the statutory damages award in enhanced damages. *See, e.g., Castro Corp.*, 2011 WL 5244440, at *5 (awarding three times the statutory damages in enhanced damages); *Greene*, 2010 WL 2696672, at *5 (awarding three times the statutory damages in enhanced damages); *Quattrocche*, 2010 WL 2302353, at *3 (awarding five times the statutory damages); *J.R.'Z Neighborhood Sports*, 2010 WL 1838432, at *2 (awarding three times the statutory damages); *Angry Ales*, 2007 WL 3226451, at *5 (awarding two times the statutory damages). Here, where the evidence suggests that no admission fee was charged and Plaintiff has provided no evidence demonstrating the cost for Defendants to legally purchase the Program, the Court will multiply the statutory damages amount by a factor of three.

Thus, Plaintiff will be awarded enhanced damages under § 605(e)(3)(C)(ii) in an amount of $3,000 for a total damages award of $4,000.

## IV.

For the foregoing reasons, default judgment is **GRANTED** in the total amount of $4,000 jointly and severally against Defendants. A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

May 15, 2012